IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WENDY D. FILLER, | ) | CASE NO. 5:14 CV 1622 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Wendy D. Filler under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Filler, who was 44 years old at the time of the administrative hearing,[10] is a high school graduate[11] who lives with her husband and teenage children.[12] She has previously worked part-time cleaning homes,[13] and most recently worked as a caregiver to an elderly woman for a few days a week.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Filler had the following severe impairments: cardiac bridge ischemia, diabetes mellitus,

---

[4] ECF # 12.

[5] ECF # 8.

[6] ECF # 13.

[7] ECF # 16 (Filler's brief); ECF # 17 (Commissioner's brief).

[8] ECF # 16-1 at 3-9 (Filler's charts); ECF # 17-1 (Commissioner's charts).

[9] ECF # 16-1 at 1-2 (Filler's fact sheet).

[10] Transcript ("Tr.") at 41, 42.

[11] *Id.* at 167.

[12] *Id.* at 59.

[13] *Id.* at 54-55.

[14] *Id.* at 56-58.

gastrointestinal reflux disease ("GERD"), borderline intellectual functioning, dysthymic disorder, cervical degenerative disc disease, and anxiety disorder.[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Filler's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently reach overhead bilaterally with the left upper extremity. The claimant can perform simple, routine, and repetitive tasks. The work environment must be free of fast-paced production requirements, involve only simple work related decisions, and routine workplace changes.[16]

The ALJ decided that this residual functional capacity precluded Filler from performing her past relevant work as a housekeeper, spot welder, cabinet assembler, and home health aide.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Filler could perform.[18] The ALJ, therefore, found Filler not under a disability.[19]

---

[15] *Id.* at 31.

[16] *Id.* at 35.

[17] *Id.* at 41.

[18] *Id.* at 42.

[19] *Id.*

**C.     Issues on judicial review and decision**

Filler asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Filler presents the following issues for judicial review:

- The ALJ's residual functional capacity determination is unsupported by substantial evidence because the ALJ erred by completely rejecting the opinion from treating physician Dr. Everly as to Plaintiff's physical limitations.

- The ALJ's credibility findings are unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility.

- The ALJ's Step 5 determination is unsupported by substantial evidence because the ALJ relied upon an incomplete hypothetical question asked to the vocational expert.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

>   Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
>   The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## *2.  Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

-6-

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

---

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[46] The

---

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But

---

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

---

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

-12-

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion

---

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.     Application of standards**

Although stated as three distinct, but related issues, Filler's argument for reversal principally focuses on whether the ALJ properly weighed the opinion of Bradley Everly, M.D., a physician who treated Filler from early 2010 through early 2012,[71] and in 2012 provided functional capacity opinions as to both Filler's physical limitations[72] as well as her mental limitations.[73]

The ALJ began his consideration of Dr. Everly's opinions by noting that Dr. Everly is Filler's "primary care physician," who "has treated [Filler] for most of the relevant period" subsequent to the alleged onset of disability in 2009.[74] The ALJ then addressed that portion of Dr. Everly's physical limitations opinion where Dr. Everly stated that Filler could sit for 60 minutes at a time, 8 hours total during the day, and stand/walk for five minutes at a time, with standing limited to 2 total hours per day and subject to Filler taking unscheduled breaks

---

[70] *Id.* at 940.

[71] *See*, *e.g.*, Tr. at 546 (2/25/10), 765 (1/26/12).

[72] *Id.* at 808-09.

[73] *Id.* at 811-13.

[74] *Id.* at 39.

-14-

during the day and shifting positions at will.[75] The ALJ also noted that portion of Dr. Everly's physical limitations opinion which stated that Filler was restricted to lifting 10 pounds, and would miss work more than four times a month.[76]

The ALJ then assigned this opinion "no weight," reasoning that although Dr. Everly is a treating source (but not actually using that term), his opinion "is inconsistent with both the treatment course and the claimant's activities of daily living."[77] To the point that the opinion was inconsistent with treatment, the ALJ specifically observed that Filler was not on any pain medication during most of the relevant period, and that "most of her treatment does not deal with any musculoskeletal problems."[78] Moreover, the ALJ determined that because Filler's diabetic neuropathy was a recent diagnosis, Dr. Everly's limitations on standing and walking were "without merit."[79]

As regards the opinion's inconsistency with Filler's activities, the ALJ pointed to Filler's ability to walk on a treadmill for an hour, and to her ability to lift the elderly woman

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

for whom she was a caregiver – both actions that the ALJ concluded were "inconsistent with Dr. Everly's opinion."[80]

Filler's essential argument as concerns the ALJ's treatment of Dr. Everly's opinions is that the ALJ failed to understand the link between Filler's anxiety and her chest pain – a link that Dr. Everly was in a unique position to see, and which he, in fact, underscored.[81] As Dr. Everly observed, in a portion of his mental health opinion quoted in Filler's brief, "situations that are anxiety provoking have risk to cause chest pain from angina which then creates a self-reinforcing cycle because [Filler] then worries about [the] chest pain which makes her more anxious."[82] Simply put, Filler contends that although there is some medical evidence in the record supporting the view that her shortness of breath and chest pain has a basis in physical problems, Dr. Everly's physical limitations opinion is grounded on his conclusion that the disabling chest pain is caused by multiple sources, including anxiety and GERD.[83]

---

[80] *Id.*

[81] ECF # 16 at 16-17.

[82] *Id.* at 17 (quoting Tr. at 812).

[83] *Id.* at 16.

Thus, she argues, the ALJ's focus on pain medication or musculoskeletal findings improperly limited the foundation for Dr. Everly's opinion to purely physical causes, and ignored the other, mental causes expressly mentioned by Dr. Everly.[84]

In fact, Filler's argument here mirrors the ALJ's own reasoning in another part of the opinion. In discussing Filler's mental limitations, the ALJ noted that Dr. Everly had found moderate limitations in Filler's ability to complete a workday or workweek, without "interruptions from psychologically based symptoms."[85] In his very next sentence, the ALJ then took note of Dr. Everly's observation, quoted above, that "[Filler's] anxiety would probably cause her chest pain, which would only make her more anxious."[86] The ALJ thereupon afforded this opinion "great weight" because "Dr. Everly has essentially been the only practitioner treating the claimant's anxiety, and is well acquainted with its relationship to her chest pain."[87]

Frankly, it is difficult to view the ALJ's total dismissal of Dr. Everly's opinion on Filler's physical limitations as logically consistent with his acceptance of Dr. Everly's reasoning that Filler's anxiety manifests itself physically as chest pain or his granting of great weight to the opinion that Filler cannot complete a regular workday or workweek without

---

[84] *Id.* at 17.

[85] Tr. at 40.

[86] *Id.*

[87] *Id.*

-17-

"interruptions from psychologically based symptoms." In particular, while the ALJ takes pains to describe Dr. Everly as "the only practitioner" with treatment history regarding Filler's anxiety, and so "well acquainted with its relationship to her chest pain," the ALJ inexplicably also fails to analyze such an opinion from a treating source in the context of the physical limitations, which is exactly the manner specified by that source.

Likewise, the Commissioner in her brief also persists in seeing no connection between mental impairments and physical limitations, but argues that the ALJ's finding of only "scant" treatment for mental impairments justifies the conclusions as to the overall treatment of Dr. Everly's opinion.[88] In that regard, the Commissioner's attempt in her brief to argue that any physical symptom of chest pain caused by anxiety was treatable medically and so not disabling,[89] is the Commissioner's *post hoc* reasoning, based on her own, independent review of the record, and so not properly before this Court. The reasoning needed to understand what weight, if less than controlling, needs to be assigned to the opinion of Dr. Everly as to the functional limitations of Filler's mental impairments that manifest as physical symptoms must be supplied here only by the ALJ.

This case is yet another example of how an ALJ's failure to adhere to, or even acknowledge, the two-step analytical path set out in *Gayheart* can leave the reviewing court with no meaningful way to understand the widely dissimilar weights given to the same

---

[88] ECF # 17 at 12.

[89] *Id.*

treating source in this opinion. In particular, where the ALJ himself has acknowledged a treating source that has found mental impairments which manifest themselves as physical limitations, it cannot be logical or acceptable for that same ALJ to totally omit mental causality from a discussion of reasons why this source's physical limitation opinion is, essentially, totally worthless.

Remanding this matter for the lack of good reasons to accord controlling weight to Dr. Everly's opinion obviates the need to now discuss Filler's claims related to how her credibility was assessed and the adequacy of the hypothetical posed to the VE, but these issues may be addressed on remand if appropriate.

## Conclusion

Therefore, for the reasons stated, I find that substantial evidence does not support the finding of the Commissioner that Filler had no disability. The denial of Filler's application is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: May 21, 2015                            s/ William H. Baughman, Jr.
                                               United States Magistrate Judge